IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Connie L. Rhinebolt,

    Plaintiff,

  v.                         Case No. 2:17-cv-369

Commissioner of
Social Security,

    Defendant.

ORDER

Plaintiff Connie L. Rhinebolt brings this action under 42 U.S.C. §§ 405(g) for review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income disability benefits. In his September 26, 2016, decision, the administrative law judge ("ALJ") found that plaintiff had severe impairments consisting of vertigo and syncope, paroxysmal atrial tachycardia, status post ablation of the right atrium, degenerative disc disease of the lumbar spine, and obesity.[1] PAGEID 99. The ALJ concluded that plaintiff has the residual functional capacity ("RFC") to lift and carry twenty pounds occasionally and ten pounds frequently, to sit for six of eight hours and to stand and walk for two of eight hours, to engage in the occasional climbing of ramps or stairs, to occasionally balance, stoop, kneel, crouch, or crawl, and to have

---

[1] "Syncope" is defined as a period of altered consciousness. *Robertson v. Comm'r of Soc. Sec.*, 513 F. App'x 439, 440-41 (6th Cir. 2013)(citing 20 C.F.R. pt. 404, subpt. P, app. 1, §4.00F(3)(b)). "Tachycardia" is classified as a form of cardiac arrhythmia. *Linderman v. Comm'r of Soc. Sec.*, No. 1:16-cv-944, 2017 WL 2304281 at *9 (N.D. Ohio April 6, 2017); 20 C.F.R. pt. 404, subpt. P, app. 1, §4.00(F)(1).

frequent exposure to extremes of temperature and humidity. The RFC precluded the climbing of ladders, ropes, or scaffolds, and any work around hazards such as unprotected heights and dangerous machinery. PAGEID 102. The ALJ concluded that plaintiff was capable of performing jobs existing in significant numbers in the national economy, and that she is not disabled. PAGEID 109-110. This matter is before the court for consideration of plaintiff's December 12, 2017, objections to the November 28, 2017, report and recommendation of the magistrate judge, recommending that the decision of the Commissioner be affirmed.[2]

I. Standard of Review

If a party objects within the allotted time to a report and recommendation, the court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also*,

---

[2]Plaintiff asserts objections based on her second and third assignments of error. She does not object to the magistrate judge's recommendation to uphold the ALJ's finding that she did not meet the criteria for Listing 4.05, which requires an association between recurrent uncontrolled arrhythmia and syncope or near syncope. 20 C.F.R. pt. 404, subpt. P, app. 1, §4.00F(3)(b).

42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). Even if supported by substantial evidence, however, "'a decision of the Commissioner will not be upheld where the [Commissioner] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

II. Plaintiff's Objections

A. ALJ's Analysis of Dr. Lee's Opinions

Plaintiff argues that the magistrate judge erred in concluding that the ALJ's decision to give little weight to the RFC questionnaire completed by Dr. Ken W. Lee, plaintiff's treating cardiologist, on June 25, 2013, was supported by good reasons which were stated in his ruling. On this questionnaire, Dr. Lee noted that during a working day, plaintiff could sit eight hours and stand or walk one hour, and that she would require a thirty-minute break one to two times per day. Ex. B21F. He further indicated that plaintiff could frequently lift less than ten pounds and occasionally lift ten to twenty pounds, and that she would likely be absent from work three or four times per month. Dr. Lee concluded that plaintiff was not physically capable of working an eight-hour day.

Under Social Security Ruling 96-2p, 1996 WL 374188 (Soc. Sec. Admin. July 2, 1996), treating-source opinions must be given "controlling weight" if: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic

3

techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." *See* 20 C.F.R. §404.1527(c)(2); Soc. Sec. Rul. No. 96-2p, 1996 WL 374188 at *2-3. If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on factors such as the length, frequency, nature, and extent of the treatment relationship, the treating source's area of specialty, and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence. 20 C.F.R. §404.1527(c)(2)-(6); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. §404.1527(c)(2). However, a formulaic recitation of factors is not required. *See Friend v. Comm'r of Soc. Sec.*, 375 F.App'x 543, 551 (6th Cir. 2010).

The court agrees with the magistrate judge that the ALJ did not err in assigning little weight to Dr. Lee's opinions, and that he provided good reasons for doing so. The ALJ noted that Dr. Lee's opinions were

> inconsistent with the medical evidence of record and based on the claimant's subjective complaints. Notes from this cardiologist do not support a limited standing and walking ability as she has had normal findings on physical exam, she has reported considerable activities of daily living, and she has had infrequent treatment with large gaps and noncompliance issues. Notably, after the completion of this residual functional capacity, with [the] last visit in 2013, the claimant failed to continue regular cardiology appointments for nearly two years. When she returned nearly two years later, she reported findings suggesting she was asymptomatic from her atrial tachycardia with no syncopal events for those past two years. Although she has alleged an increase in her symptoms, she has not resumed regular treatment, has not had the recommended one-week monitoring, and is not on

4

      any medications other than Lipitor.  Dr. Lee did not have
      the benefit of the claimant's apparent improvement in
      symptomology with no further cardiology visits for nearly
      two years after he last saw the claimant.

PAGEID 107.

    Plaintiff argues that the ALJ did not adequately explain what he meant by "inconsistent with the medical evidence of record." Although an ALJ need not discuss every piece of evidence in the record for his decision to stand, *see Kornecky v. Comm'r of Soc. Sec.*, 167 F.App'x 496, 508 (6th Cir. 2006), the ALJ's decision does include a thorough discussion of plaintiff's medical records, including her history of treatment with Dr. Lee through her last appointment with Dr. Lee on May 6, 2013, a month and a half before Dr. Lee completed the RFC questionnaire.

    For example, the ALJ noted that the records of plaintiff's April 26, 2011, appointment with Dr. Lee reported normal findings on exam.  PAGEID 103, citing Exhibit B9F/12.  The ALJ observed that limitations recorded by plaintiff on a September 13, 2011, functional report were never reported to Dr. Lee.  PAGEID 104. Thus, these reported limitations could not have supported Dr. Lee's assessment on the questionnaire.  The ALJ also noted that after plaintiff's May 6, 2013, appointment with Dr. Lee, she stopped her cardiology follow-up appointments and did not return until April 7, 2015, when she was seen by Tim Nuss, CNP, a nurse practitioner. The ALJ discussed the April 7, 2015, report of CNP Nuss, which indicated that plaintiff's exam findings were normal and that plaintiff denied any near syncope or syncopal events.  PAGEID 104. The ALJ further stated that at a follow-up appointment on May 5, 2015, plaintiff's electrocardiogram was normal and she reported no further palpitations, although she mentioned episodic vertigo

5

symptoms. PAGEID 104.

Plaintiff argues that the notes of CNP Nuss are not sufficient to indicate that her condition had improved. However, the ALJ also discussed at length the treatment notes of plaintiff's primary care physician, Dr. Charles Vonder Embse. The ALJ noted that on June 12, 2012, Dr. Vonder Embse completed an RFC questionnaire opining that plaintiff could not stand or walk for any length of time, whereas on April 19, 2015, Dr. Vonder Embse found plaintiff capable of standing/walking four hours per day and sitting six hours per day, with absences once or twice a month. PAGEID 105-107. Although the ALJ gave the 2012 opinion "minimal weight," he gave the 2015 opinion "some weight, as it suggests that the claimant requires less limitation than he previously suggested." PAGEID 106-107. Thus, the ALJ's reliance on the later evaluation by Dr. Vonder Embse was not inconsistent with his decision to give the 2012 evaluation little weight.

The ALJ also summarized the notes of Dr. Joshua Silverstein, a cardiologist who saw plaintiff on September 22, 2015, in regard to her complaints of daily episodes of palpitations associated with lightheadedness and near syncope with passing out several times a day. Dr. Silverstein noted that he was not convinced that plaintiff's symptoms were attributable to her supraventrical tachycardia, and recommended a one-week event recorder, which plaintiff did not use. The ALJ observed that plaintiff did not follow up with Dr. Silverstein, and that the notes for her appointments with Dr. Vonder Embse through January 26, 2016, did not reflect any reported symptoms of tachycardia or syncope. PAGEID 104-105.

Plaintiff notes that in discussing the weight assigned by the

ALJ to Dr. Lee's opinions, the magistrate judge agreed with the ALJ's conclusion that the objective evidence failed to document an arrhythmia coinciding with syncope or near syncope. *See* Doc. 14, pp. 16-17. She argues that this was only relevant to the Step Three determination of whether her condition satisfied the requirements of Listing 4.05, not to the ALJ's decision to give little weight to Dr. Lee's RFC questionnaire. There was nothing inappropriate about the magistrate judge's comment. Dr. Lee opined in a separate report dated June 28, 2013, that plaintiff's condition met the requirements of Listing 4.05. *See* Exhibit B22F. This report was relied upon by plaintiff in her case before the ALJ and in the now abandoned first assignment of error which she argued before the magistrate judge. The magistrate judge's analysis was appropriate, as she was then addressing the weight assigned by the ALJ to both of Dr. Lee's opinions. As discussed above, the ALJ clearly provided good reasons as to why he was assigning little weight to Dr. Lee's RFC determination of June 25, 2013. The ALJ also separately provided good reasons for giving no weight to Dr. Lee's June 28, 2013, opinion, noting the lack of any explanation on the form, the lack of objective evidence to support the criteria of the listing, and the hearing testimony of Keith R. Holan, M.D., a medical expert who reviewed plaintiff's medical records. *See* PAGEID 107. The ALJ gave Dr. Holan's testimony "significant weight." PAGEID 103.

 The court concludes that the ALJ adequately stated good reasons for the weight he assigned to Dr. Lee's opinions, and that those reasons are supported by substantial evidence.

B. ALJ's Assessment of Plaintiff's Credibility/Consistency

Plaintiff also objects to the ALJ's decision to discount her credibility due to the gap in cardiac treatment and the failure to seek additional treatment. At the time of the ALJ's decision, SSR 96-7p, 1996 WL 374186 (July 2, 1996), governed the ALJ's analysis of the credibility of the claimant's statements concerning his or her symptoms. That ruling was later superseded by SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016), which eliminated the use of the term "credibility" in order to "clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 WL 1119029 at *1. The new ruling directs the ALJ to look at whether the claimant's statements about the intensity, persistence and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record. *Id.*, 2016 WL 1119029 at *7. The Sixth Circuit has not decided whether the new ruling can be applied retroactively. *See Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119, n. 1 (6th Cir. 2016). The magistrate judge did not reach this issue, as she concluded that the ALJ did not err under either ruling. This court agrees.

Both rulings permit the ALJ to consider evidence showing that the claimant is not following the prescribed treatment in weighing the claimant's claims of allegedly disabling symptoms. SSR 96-7p states that "the individual's statements may be less credible ... if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7p, 1996 WL 374186 at *7. The new ruling states that "if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are

8

inconsistent with the overall evidence of record." SSR 16-3p, 2016 WL 1119029 at *8.

The ALJ noted that plaintiff "has had significant gaps in treatment and compliance issues" which were "suggestive of tolerable symptomology." PAGEID 105, 108. He observed that plaintiff's last visit with Dr. Lee was on May 6, 2013, and that she did not return to the cardiologist's office until April 7, 2015. PAGEID 104. The ALJ also commented that after plaintiff had a Holter monitor (loop recorder) implanted on March 18, 2011, which recorded incidents of supraventricular tachycardia and permitted plaintiff to use an activator when she experienced episodes of near syncope or syncope, she failed to use and ultimately lost the activator. PAGEID 103-104. Plaintiff also failed to follow up on Dr. Silverstein's recommendation for the use of a one-week event recorder and did not return for additional treatment with Dr. Silverstein. PAGEID 104-105.

Plaintiff argues that the magistrate judge and the ALJ failed to address her arguments that, in plaintiff's opinion, many of the treatment options were not effective. However, the magistrate judge acknowledged that plaintiff had undergone an ablation which was not successful in terminating her arrhythmia; the ALJ also referred to the ablation procedure. Doc. 14, p. 5; PAGEID 104. The ALJ noted as well that plaintiff was prescribed Propafenone, which was discontinued after plaintiff reported worsening palpitations. PAGEID 104. Plaintiff's use of the loop recorder was destined to be unsuccessful due to her failure to use the activator. The one-week event recorder recommended by Dr. Silverstein may have established that her episodes of syncope coincided with incidents of supraventricular tachycardia. Because

9

plaintiff did not use this course of treatment, there is no way of knowing if the test results would have been helpful.

The ALJ also concluded that plaintiff's "alleged frequency of her syncopal events and her tachycardia are contradicted by her own reports to her treating doctors revealing far less frequency." PAGEID 105. Support for this is found in the ALJ's discussion of plaintiff's medical records. For example, the ALJ noted that on May 29, 2012, plaintiff reported just two episodes of lightheadedness and syncope and that she denied any syncope on March 29, 2013. PAGEID 104. The ALJ observed that plaintiff denied any syncopal events at her visit with CNP Nuss on April 7, 2015, yet claimed at her September 22, 2015, visit to Dr. Silverstein that she was passing out several times a day. PAGEID 104. The ALJ gave significant weight to the hearing testimony of Dr. Holan, who stated that it was "somewhat confusing" that plaintiff reported no problems with syncope on April 7, 2015, but then reported daily syncopal episodes on September 22, 2015. PAGEID 103, 148.

The ALJ also found that plaintiff's allegations of disability were not consistent with her reports of her daily activities, which included doing some shopping, using modern technology to access social media, reading novels, watching television, attending parent-teacher meetings, dining out, helping with laundry, caring for her eight-year-old son, socializing with family members, and doing some cooking. PAGEID 100, 102, 105.

The court concludes that the ALJ did not err in considering the gap in plaintiff's treatment, her failure to comply with her doctors' treatment recommendations, and the other inconsistencies he noted in the record.

10

III. Conclusion

For the reasons stated above, the court concludes that the Commissioner's non-disability finding is supported by substantial evidence. The court overrules the plaintiff's objections (Doc. 15), and adopts and affirms the magistrate judge's report and recommendation (Doc. 14). The decision of the Commissioner is affirmed, and this action is dismissed. The clerk is directed to enter final judgment in this case.

It is so ordered.


Date: January 22, 2018                s/James L. Graham
                                      James L. Graham
                                      United States District Judge